1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CORNELL D. WHEELER, | ) 1:10-cv-02053 GSA |
| Plaintiff, | ) **ORDER REGARDING PLAINTIFF'S** |
| | ) **SOCIAL SECURITY COMPLAINT** |
| v. | ) |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) |
| Defendant. | ) |

## **BACKGROUND**

Plaintiff Cornell D. Wheeler ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for disability insurance and supplemental security income benefits pursuant to Titles II and XVI of the Social Security Act.  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Gary S. Austin, United States Magistrate Judge.[1]

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge.  (*See* Docs. 8 & 9.)

## FACTS AND PRIOR PROCEEDINGS[2]

Plaintiff filed an application for disability insurance and supplemental security income benefits, alleging disability beginning September 5, 2005.  *See* AR 128-144.  Plaintiff's applications were denied initially and on reconsideration.  Thereafter, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  AR 80-88, 93-99, 101-107.   ALJ Stephen W. Webster held a hearing, and issued an order denying benefits on August 31, 2009, finding that Plaintiff was not disabled.  AR 9-16.  On September 3, 2010, the Appeals Council denied review. AR 1-3.

**Hearing Testimony**

ALJ Webster held a hearing on June 16, 2009, in Fresno, California.  Plaintiff appeared and testified.  He was represented by attorney Dennis Bromberg.  Vocational Expert ("VE") Judith Najarian also testified.  AR 17-43.

Plaintiff was born January 30, 1968.  He is not married and lives with his mother and grandmother.  AR 20-21, 38.  He has four children.  AR 21.  While he does have a driver's license, Plaintiff indicated he drives only "sometimes," otherwise, his mother drives him where he needs to go.  AR 21.

After graduating high school, Plaintiff took welding classes, but did not complete the course.  He has had no other vocational training.  AR 23.  Plaintiff has not worked since the onset of his disability on September 5, 2005.  AR 24.

A typical day for Plaintiff involves sitting around the house and watching television "on and off."  AR 22, 38.  He no longer plays video games and does not use a computer at home, nor does he read.  AR 22.  Plaintiff does not cook, but he can heat up food in the microwave and make a sandwich.  AR 22, 39.  While he does not shop, do the laundry, vacuum, sweep or mop, Plaintiff does take out the trash "sometimes."  AR 22, 39.

Plaintiff does not require assistance with any personal grooming needs.  AR 22.  He does not have any hobbies and no longer goes to the movies.  AR 22-23.  He loves watching and

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

2

1    renting action movies and has no difficulty paying attention during the movie.  AR 36-37.

2    Plaintiff is able to attend church and sometimes visits with friends.  AR 22-23.  He indicated he

3    would like to go fishing, but cannot do so.  AR 38.

4         Plaintiff suffers from depression and is "[j]ust not happy."  AR 24.  He receives treatment

5    for his depression at Fresno County Mental Health and goes to the doctor there when his mother

6    tells him to do so.  AR 25.  He seeks treatment for his physical ailments from his mother's

7    physician, Dr. Kerr, and does so when she directs him to do so.  AR 25.

8         With specific regard to his back pain, Plaintiff feels pain at the top of his buttocks up onto

9    the left side of his back.  AR 30-32.  He pain is sharp "[e]very now and then."  AR 30-31.

10   Sometimes he can bend and stretch; other times he will feel a pinch.  AR 31.  The pain also goes

11   down his left leg into his knee and down into his ankle.  AR 34-35.  When he was asked whether

12   walking made the pain worse, Plaintiff replied that he could walk about an hour before having to

13   stop.  He can stand, as if waiting in line, for about fifteen to twenty minutes.  AR 32.[3]  Plaintiff

14   can sit for about twenty minutes before having to get up.  AR 32.  He can lift and carry a gallon

15   of milk, or about eight pounds.  AR 27.  Plaintiff indicated that his pain is alleviated by watching

16   television because then he is not thinking about the pain; it takes his mind off of the pain.  AR

17   33-34.  The prescription medication Vicodin relaxes him and helps with the pain because it

18   "works real good."  AR 34.  When he was asked about his energy level, Plaintiff responded that

19   it was "[v]ery high."  AR 36.

20        Plaintiff testified that his inability to "think right" is what he means when he says he is

21   depressed.  AR 28.  He takes medication to relax.  AR 28.  As a result of the medication, Plaintiff

22   indicated he has not heard voices "in a while," having last heard voices a few months prior to the

23   hearing.  AR 37.  He does think about suicide every day and prefers to be alone.  AR 37-38.

24   Plaintiff denied ever having a problem with drugs or alcohol, specifically stating he did not use

25   drugs or drink alcohol.  AR 29.

26

27   _____

28        [3] Although it may be a transcription error, at page 26 of the Administrative Record it appears Plaintiff
     originally testified he could walk and stand "for a minute."

VE Najarian[4] was asked to consider a hypothetical worker of Plaintiff's age, education and work history, whom can lift twenty pounds occasionally and ten pounds frequently, can sit, stand and/or walk for six hours in an eight-hour day, and whom may occasionally stoop, crouch, kneel or crawl, and is limited to simple, routine and repetitive tasks.  AR 40.  VE Najarian indicated that such an individual would be unable to perform Plaintiff's past work. Nevertheless, the VE indicated the individual could perform light, unskilled work.  AR 40.  For example, the worker could perform the following: meat or poultry cutter, DOT[5] 525.687-010, with 6,881 positions available in California; production line solderer, DOT 813.684-022, SVP[6] of 2, with 5,164 positions available in California; and packing line worker, DOT 753.687-038, with 31,574 positions available in the state.  AR 40-41.  Nationwide figures are obtained by multiplying times ten.  AR 41.

In a second hypothetical, the VE was asked to assume a hypothetical identical to the first, with an occasional limitation to maintaining attention, concentration and pace.  AR 41.  VE Najarian indicated such an individual would be unable to perform Plaintiff's past work or any other work in the regional or national economy.  AR 41.

In a third hypothetical posed by Plaintiff's counsel, the VE was asked to assume a hypothetical worker of Plaintiff's age, education and work history, whom can lift and carry less than ten pounds occasionally and frequently, can stand or walk for two hours in an eight-hour day and sit for less than six hours in an eight-hour day, whom cannot bend, stoop, crouch, crawl, kneel, or squat, and whom may not drive or operate machinery, work at heights, or use the upper and lower extremities for pushing or pulling or power grasping, whom cannot walk for prolonged periods over uneven terrain without an assistive device.  AR 42.  The VE indicated such an individual could not perform Plaintiff's past work nor any other work in the national economy. AR 42.

---

[4] Plaintiff's past work includes that of a cabinet assembler, tow truck operator, gate keeper, and glass installer.  *See* AR 189.

[5] "DOT" refers to the Dictionary of Occupational Titles.

[6] "SVP" refers to Specific Vocational Preparation.

1    **Medical Record**

2        The entire medical record was reviewed by the Court.  AR 215-338.  The medical

3    evidence will be referenced below as necessary to this Court's decision.

4    **ALJ's Findings**

5        Using the Social Security Administration's five-step sequential evaluation process, the

6    ALJ determined that Plaintiff did not meet the disability standard.  AR 9-16.

7        More particularly, the ALJ found that Plaintiff had not engaged in substantial gainful

8    activity since September 5, 2005.  AR 11.  Further, the ALJ identified mechanical back pain and

9    depression as severe impairments.  AR 11.  Nonetheless, the ALJ determined that the severity of

10   the Plaintiff's impairment did not meet or exceed any of the listed impairments.  AR 11-12.

11       Based on his review of the entire record, the ALJ determined that Plaintiff has the

12   residual functional capacity ("RFC") to lift and carry twenty pounds occasionally and ten pounds

13   frequently, can walk, stand or sit for six hours in an eight-hour workday, with the ability to

14   occasionally stoop, crouch, kneel and crawl, and is limited to simple, routine, repetitive work.

15   AR 12-14.

16       Next, the ALJ determined that Plaintiff was unable to perform his past relevant work.

17   Nevertheless, considering Plaintiff's age, education, work experience and RFC, the ALJ

18   determined there were jobs that existed in significant numbers in the national economy that

19   Plaintiff could perform.  Specifically, the ALJ found Plaintiff could perform the work of a meat

20   cutter, production line solderer or packing line worker.  Therefore, the ALJ found Plaintiff was

21   not disabled.  AR 15-16.

22                              **SCOPE OF REVIEW**

23       Congress has provided a limited scope of judicial review of the Commissioner's decision

24   to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations,

25   this Court must determine whether the decision of the Commissioner is supported by substantial

26   evidence.  42 U.S.C. § 405 (g).  Substantial evidence means "more than a mere scintilla,"

27   *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v.*

28   *Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a

                                        5

1  reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at

2  401.  The record as a whole must be considered, weighing both the evidence that supports and

3  the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993,

4  995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must

5  apply the proper legal standards.  *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).

6  This Court must uphold the Commissioner's determination that the claimant is not disabled if the

7  Secretary applied the proper legal standards, and if the Commissioner's findings are supported by

8  substantial evidence.  *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th

9  Cir. 1987).

10                                          **REVIEW**

11           In order to qualify for benefits, a claimant must establish that he is unable to engage in

12  substantial gainful activity due to a medically determinable physical or mental impairment which

13  has lasted or can be expected to last for a continuous period of not less than twelve months.  42

14  U.S.C. § 1382c (a)(3)(A).  A claimant must show that he has a physical or mental impairment of

15  such severity that he is not only unable to do her previous work, but cannot, considering his age,

16  education, and work experience, engage in any other kind of substantial gainful work which

17  exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).

18  The burden is on the claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th

19  Cir. 1990).

20           Here, Plaintiff argues that the ALJ erred by failing to provide specific and legitimate

21  reasons for discounting the opinion of the consultative examiner.

22                                         **DISCUSSION**

23        ***Examining Physician Opinion***

24           Plaintiff asserts the ALJ erred by failing to articulate specific and legitimate reasons for

25  rejecting the opinions of an examining physician.  (Doc. 11 at 5-9.)  The Commissioner contends

26  the ALJ properly assessed the medical evidence, therefore, no error occurred.  (Doc. 12 at 5-9.)

27

28

1        **1.     Legal Standards**

2        Cases in this circuit distinguish among the opinions of three types of physicians: (1) those

3   who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant

4   (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining

5   physicians).  As a general rule, more weight should be given to the opinion of a treating source

6   than to the opinion of doctors who do not treat the claimant.  *Winans v. Bowen*, 853 F.2d 643,

7   647 (9th Cir.1987).  At least where the treating doctor's opinion is not contradicted by another

8   doctor, it may be rejected only for "clear and convincing" reasons.  *Baxter v. Sullivan*, 923 F.2d

9   1391, 1396 (9th Cir. 1991).  Even if the treating doctor's opinion is contradicted by another

10  doctor, the Commissioner may not reject this opinion without providing "specific and legitimate

11  reasons" supported by substantial evidence in the record for so doing.  *Murray v. Heckler*, 722

12  F.2d 499, 502 (9th Cir. 1983).

13       The opinion of an examining physician is, in turn, entitled to greater weight than the

14  opinion of a nonexamining physician.  *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990);

15  *Gallant v. Heckler*, 753 F.2d 1450 (9th Cir. 1984).  As is the case with the opinion of a treating

16  physician, the Commissioner must provide "clear and convincing" reasons for rejecting the

17  uncontradicted opinion of an examining physician.  *Pitzer*, 908 F.2d at 506. And like the opinion

18  of a treating doctor, the opinion of an examining doctor, even if contradicted by another doctor,

19  can only be rejected for specific and legitimate reasons that are supported by substantial evidence

20  in the record.  *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995).

21       The opinion of a nonexamining physician cannot, by itself, constitute substantial evidence

22  that justifies the rejection of the opinion of either an examining physician or a treating physician.

23  *Pitzer*, 908 F.2d at 506 n. 4; *Gallant*, 753 F.2d at 1456.  In some cases, however, the ALJ can

24  reject the opinion of a treating or examining physician, based in part on the testimony of a

25  nonexamining medical advisor.  *E.g., Magallanes v. Bowen,* 881 F.2d 747, 751-55 (9th Cir.

26  1989); *Andrews*, 53 F.3d at 1043; *Roberts v. Shalala*, 66 F.3d 179 (9th Cir. 1995).  For example,

27  in *Magallanes*, the Ninth Circuit explained that in rejecting the opinion of a treating physician,

28  "the ALJ did not rely on [the nonexamining physician's] testimony alone to reject the opinions of

1  Magallanes's treating physicians . . .." *Magallanes*, 881 F.2d at 752 (emphasis in original).

2  Rather, there was an abundance of evidence that supported the ALJ's decision: the ALJ also

3  relied on laboratory test results, on contrary reports from examining physicians, and on testimony

4  from the claimant that conflicted with her treating physician's opinion. *Id*. at 751-52.

5  ## 2.    Relevant Medical Opinions

6  Board eligible physician Rosalinda Serrano, M.D., completed an orthopedic evaluation on

7  October 26, 2007.  AR 306-311.  Following a review of medical records and a history provided

8  by Plaintiff, Dr. Serrano conducted a physical examination.  It was noted Plaintiff's gait was

9  abnormal and "tilted to the right."  AR 308.  In the doctor's range of motion findings it is noted

10 that straight leg raising was positive bilaterally at fifty degrees, and that in general, Plaintiff

11 exhibited pain and tenderness at C3-T1 and L2-L5.  AR 309.  Motor strength was recorded at 5/5

12 in bilateral upper extremities and 4/5 in the lower extremities, with normal muscle bulk, tone and

13 strength.  AR 309.  Bilateral grip strength was 5/5.  AR 310.  Decreased sensation was noted at

14 L5-S1.  AR 310.  Dr. Serrano diagnoses included:

15                1.  Sprain strain lumbosacral spine.
                 2.  Rule out degenerative joint disease lumbosacral spine.
16                3.  Rule out herniated disk, lumbar spine.
                 4.  Left lumbar radiculopathy.

17 AR 310.  The doctor's functional assessment provided that Plaintiff could stand and walk for two

18 hours in an eight-hour workday and sit less than for six hours in an eight-hour workday, was able

19 to lift and carry less than ten pounds frequently and occasionally, with an inability to bend, stoop,

20 crouch, crawl, kneel or squat.  He was to use an assistive device for prolonged ambulation on

21 uneven terrain, and workplace limitations included working at heights, driving forklift or

22 machinery, operating machinery, using both upper and lower extremities in pushing and pulling,

23 and power grasping.  AR 310.

24 Wesley G. Jackson, M.D., completed a Physical Residual Functional Capacity

25 Assessment on November 20, 2007.  He opined Plaintiff was capable of lifting and carrying

26 twenty pounds occasionally and ten pounds frequently, of standing and walking for six hours in

27 an eight-hour work day and of sitting for six hours in an eight-hour workday, with unlimited

28 pushing and pulling capabilities.  AR 313.  Further, the doctor found Plaintiff capable of frequent

balancing, and occasional climbing, stooping, kneeling, crouching and crawling.  AR 314.  The

doctor did not identify any manipulative, visual, communicative or environmental limitations.

AR 314-315.  State agency physicians Evelyn B. Aquino-Caro and Brian Ginsburg concurred

with a light RFC.  AR 293, 323.

### 3.    ALJ's Findings

Here, ALJ Webster found as follows:

> Consultative internist Dr. Serrano concluded that the claimant could lift
> and carry less than 10 pounds, stand and/or walk 2 hours and sit 6 hours in an 8-
> hour workday, could perform no bending, stooping, crouching, crawling, kneeling
> or squatting, could reach bilaterally with the upper extremities only occasionally,
> would require an assistive device for prolonged walking on uneven terrain, and
> must avoid working at heights, driving a forklift, driving machinery, operating
> machinery, and using both upper and lower extremities in pushing, pulling, and
> power grasping.  Dr. Serrano diagnosed the claimant with a sprain/strain of the
> lumbosacral spine.  She ruled out degenerative joint disease of the lumbosacral
> spine, herniated disk of the lumbar spine and left lumbar radiculopathy. Dr.
> Serrano reported the claimant had an abnormal gait that was tilted to the right, an
> only slightly limited range of motion, positive straight leg raises bilaterally at 50
> degrees, full motor strength of the upper extremities, 4/5 motor strength of the
> lower extremities due to back pain, no atrophy, and normal grip strengths.
> However, Dr. Serrano did not specify whether the straight leg raises were tested in
> the supine and sitting positions.  I give this opinion little weight because it is
> inconsistent with the examination results and the medical record as a whole.
> The State agency medical consultants concluded that the claimant could
> lift and carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk
> 6 hours and sit 6 hours in an 8-hour workday, occasionally climb, stoop, kneel,
> crouch, and crawl, and frequently balance.  I give this opinion significant weight
> because it is consistent with the record as a whole.

AR 14, internal citations omitted.

### 4.    Analysis

Because ALJ Webster refused to adopt the opinion of examining physician Dr. Serrano,

he was required to provide specific and legitimate reasons for doing so.  The ALJ provided three

reasons for rejecting the opinion of Dr. Serrano as it related to her functional assessment: (1) that

Dr. Serrano's report notes positive straight leg raising without specifying whether the test was

performed in both the supine and sitting positions; (2) that the opinion is inconsistent with the

examination results; and (3) the opinion is inconsistent with the medical record as a whole.

First, ALJ Webster indicated that he gave Dr. Serrano's opinion little weight because the

medical evidence as a whole does not support the opinion; this is a specific and legitimate

1    reason.  A lack of supporting clinical findings is a valid reason for rejecting a physician's

2    opinion. *Magallanes v. Bowen*, 881 F.2d at 751.  Second, the ALJ also noted that Dr. Serrano's

3    opinion itself was inconsistent with her examination results.  The ALJ cited as but one example

4    that Dr. Serrano's examination revealed full motor strength in the upper extremities, yet she

5    found Plaintiff to be limited in the use of his upper extremities.  Rejecting an opinion that

6    contains internal inconsistencies is a specific and legitimate reason to discount the opinion.

7    *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995).  Finally, there is the ALJ's notation about

8    the straight leg raising results recorded by Dr. Serrano.  Whether or not the ALJ meant this to be

9    a separate reason upon which to reject Dr. Serrano's opinion is not important.  While Dr.

10   Serrano's examination revealed positive straight leg raising results, the medical record as a whole

11   establishes at least a half dozen findings to the contrary.  *See* AR 328-219, 224, 229, 233, 240,

12   334.  In other words, those results are inconsistent with the medical record - a specific and

13   legitimate reason to discount Dr. Serrano's opinion.

14        When the ALJ rejects the opinion of an examining physician in reliance on the

15   non-examining physician, "reports of the nonexamining advisor need not be discounted and may

16   serve as substantial evidence when they are supported by other evidence in the record and are

17   consistent with it." *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995); *Saelee v. Chater*, 94

18   F. 3d 520, 522 (9th Cir. 1996).  Here, the medical record is unambiguous and serves as other

19   evidence in support of the non-examining physicians' opinions.

20        In sum, the ALJ's findings are supported by substantial evidence and are free of legal

21   error.

22

23

24

25

26

27

28

1

<u>CONCLUSION</u>

2      Based on the foregoing, the Court finds that the ALJ's decision is supported by

3 substantial evidence in the record as a whole and is based on proper legal standards.

4 Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the

5 Commissioner of Social Security.  The Clerk of this Court is DIRECTED to enter judgment in

6 favor of Defendant Michael J. Astrue, Commissioner of Social Security and against Plaintiff,

7 Cornell D. Wheeler.

8

9      IT IS SO ORDERED.

10  **Dated:   November 23, 2011**              **/s/ Gary S. Austin**
                                          UNITED STATES MAGISTRATE JUDGE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28